IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THE CITY OF TULSA, OKLAHOMA, an Oklahoma municipal corporation,<br><br>Plaintiff,<br><br>v.<br><br>SOUTH KANSAS AND OKLAHOMA RAILROAD, L.L.C., and CENTENNIAL ENERGY, L.L.C.,<br><br>Defendants. | Case No. 24-CV-225- JFJ |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion to Remand (ECF No. 17). For the reasons detailed below, the Motion to Remand is **GRANTED**.

**I.**     **Factual Background**

According to Plaintiff City of Tulsa's ("City") First Amended Petition for Declaratory Judgment, Defendant South Kansas and Oklahoma Railroad, L.L.C. ("SKOL") is a short-line railroad that operates railroad lines and interchanges with other railroads, such as BNSF Railway Company, Union Pacific Railroad Company, and Kansas City Southern Railway. ECF No. 2-2, ¶ 24. SKOL operates a special purpose transloading facility in Tulsa, Oklahoma, which enables the transfer of hazardous materials commodities from rail to truck (the "Transload Facility"). *Id.* ¶¶ 3-4. Defendant Centennial Energy, LLC ("Centennial") leases the Transload Facility from SKOL for the purpose of transloading hazardous materials. *Id.* ¶ 6. Centennial uses the Transload Facility to receive, store, and transload butane, a form of liquefied natural gas that is hazardous and extremely flammable. *Id.* ¶ 27, 33. Under the Tulsa Zoning Code, transloading butane is a high-impact industrial use because of its hazardous nature. *Id.* ¶ 33. The Transload Facility has been

zoned as "Industrial-Moderate" ("IM") since 1970. *Id.* ¶ 34. For this reason, high-impact industrial use is not permitted on the Transload Facility. *Id.* ¶ 35. However, City alleges SKOL has taken the position that the Tulsa Zoning Code is preempted by federal railroad law. *Id.* ¶ 37. City therefore seeks a declaratory judgment that the Tulsa Zoning Code is applicable and enforceable against the current use of the Transload Facility on SKOL's property for hazardous materials transloading. *Id.* ¶¶ 38-42.

SKOL removed the case to federal court on May 14, 2024. ECF No. 2. SKOL alleges City's claims are preempted by federal law and exclusive jurisdiction lies with the federal court under 28 U.S.C. §§ 1331 and 1441(c). Specifically, SKOL alleges Section 10501 of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10501(b) ("ICCTA"), governs City's claims, and under the doctrine of "complete preemption," City's claims are necessarily federal in nature and wholly displaced by state-law causes of action in this field. SKOL argues the ICCTA, which governs the regulation of railroads, is extremely broad and applies to the issues in City's claims. Defendant Centennial consents to removal. ECF No. 2 at 5.

City filed a motion to remand the case to the Tulsa County District Court. ECF No. 17. City argues its First Amended Petition does not present a federal question. City argues its claims arise pursuant to the Oklahoma Declaratory Judgment Act, Okla. Stat. tit. 12 § 1651, *et seq.*, and the City's zoning authority. City contends Defendants raise no more than a defense of federal preemption and have failed to show "complete preemption" of their claims by the ICCTA.

## II.     Removal Standard

Because federal courts are courts of limited jurisdiction, they must have a statutory basis for their jurisdiction. *Dutcher v. Matheson*, 733 F.3d 980, 984 (10th Cir. 2013). The federal removal statute permits removal of civil actions "of which the district courts of the United States

have original jurisdiction." 28 U.S.C. § 1441. The removing party bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *See Dutcher*, 733 F.3d at 985.

Where, as here, a defendant bases removal on 28 U.S.C. § 1331 federal question jurisdiction, it must show that "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). *See* 28 U.S.C. § 1331 (stating that federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The plaintiff "may avoid federal jurisdiction by exclusive reliance on state law," and a case "may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint." *Id.* at 392-93 (emphasis in original). *See Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (holding that defendant's assertion of federal preemption defense is "not enough to make the case 'arise under' federal law") (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)). "Under the 'artful pleading' doctrine, however, a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim." *Id.* (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 22 (1983)).

### III.   Defendants Cannot Show Removal Was Proper Under Doctrine of "Complete Preemption"

SKOL alleges federal question jurisdiction under § 1331 based on the doctrine of "complete preemption" of state-law claims.

#### A.   Legal Standards

Under the "complete preemption" doctrine, removal to federal court relies on the "theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Schmeling*, 97 F.3d at 1339 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). "This is so

because the federal statute so completely preempts the state-law cause of action that 'a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1190 (D. Kan. 2017) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "In these cases, federal law does not merely preempt a state law to some degree; rather, it substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." 14C Charles A. Wright et al., *Federal Practice & Procedure* § 3722.2 (Rev. 4th ed. June 2024). The "complete preemption" doctrine is different in nature than an asserted or anticipated federal preemption *defense*, which is "not enough to make the case 'arise under' federal law." *Schmeling*, 97 F.3d at 1339 (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)).[1]

Complete preemption is a "rare doctrine" that represents an "extraordinary pre-emptive power." *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1204 (10th Cir. 2012) (quotations omitted). "Consequently, the Supreme Court has warned that complete preemption should not be 'lightly implied.'" *Id.* at 1205 (quoting *Bill Johnson's Rests., Inc. v. NLRB,* 461 U.S. 731, 752 (1983) (Brennan, J., concurring)). To apply complete preemption, "the asserted federal statute must so pervasively regulate its respective area that it leaves no room for state-law claims." *Id.* (cleaned up). The Tenth Circuit has instructed that courts considering a complete preemption claim must engage in a two-part inquiry: (1) "whether the federal regulation at issue preempts the state law relied on by the plaintiff"; and (2) "whether Congress intended to

---

[1] The First Circuit has noted the doctrine of complete preemption "is well established, although perhaps poorly named, since ordinary 'defensive' preemption may also be 'complete,' as where Congress 'occupies the field,' thereby blocking state regulation." *Fayard v. Northeast Vehicle Servs., LLC*, 533 F.3d 42, 45-46 (1st Cir. 2008). *See also Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 n.7 (2d Cir. 2005) (explaining distinction between the defense of "field preemption," and the doctrine of "complete preemption").

allow removal in such a case, as manifested by the provision of a federal cause of action to enforce the federal regulation." *Id.* (cleaned up). The Tenth Circuit has cautioned, however, that courts "should begin their inquiry with the second prong" in the interests of comity and prudence, as the first prong will "frequently require a discussion of the merits of the preemption defense." *Id.* at 1206 (citing *Schmeling*, 97 F.3d at 1343).

To satisfy the second prong of the Tenth Circuit's complete preemption test, "the federal cause of action need not provide the same remedy as the state cause of action." *Suncor Energy*, 25 F.4th at 1256 (cleaned up). However, "the federal remedy at issue must vindicate the same basic right or interest that would otherwise be vindicated under state law." *Id.* at 1256-57 (cleaned up). *See Fayard*, at 47 ("For complete preemption, the critical question is whether federal law provides an exclusive substitute federal cause of action that a federal court (or possibly a federal agency) can employ for the kind of claim or wrong at issue."). "Exclusive federal regulation alone might preempt state claims; but it is the further presence of a counterpart federal cause of action that allows the state claim to be transformed into a federal one." *Id.* at 46.

**B.   Analysis**

The Court concludes that Defendants fail to show "complete preemption" under the controlling Tenth Circuit test. First, in their Notice of Removal and in their response brief, Defendants repeatedly confuse the concept of ordinary defensive preemption with "complete preemption" by the ICCTA of City's state-law claim. For example, the two Tenth Circuit cases Defendants cite in support of their preemption arguments analyze only ordinary preemption by the ICCTA, not whether an ICCTA provision "completely preempts" a state law claim to permit removal. *See Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1129-1132 (10th Cir. 2007); *Port*

5

*City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186 (10th Cir. 2008).[2] Defendants' reliance on this and other "ordinary" preemption cases does not persuade the Court that removal was proper.

Second, Defendants fail to identify any federal cause of action City could pursue to potentially vindicate its claim for state-based declaratory judgment that the Tulsa Zoning Code applies to the Transload Facility's operations. Defendants rely on the ICCTA's express preemption provision, 49 U.S.C. § 10501(b), which generally states that the Surface Transportation Board ("STB") has exclusive jurisdiction over "transportation by rail carriers." Section 10501(b) further provides that, "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b).[3] "Transportation" is defined in the ICCTA to include "property, facility, instrumentality, or equipment of any kind related to the movement of . . . property . . . by rail," and "services related to that movement, including receipt, delivery, elevation, transfer in transit, . . . storage, handling, and interchange of . . . property." 49 U.S.C. § 10102(9).

---

[2] The language used by the Tenth Circuit in *Port City* is somewhat confusing. However, in finding *Port City* not controlling on the issue of complete preemption, the District of Colorado explained: "Although *Port City* describes the effect of certain provisions of the ICCTA as 'completely preempt[ing] [plaintiff's] state tort claims,' the opinion contains no discussion of the complete preemption doctrine." *Beatty Grp. LLC v. Great W. Ry. of Colorado, L.L.C.*, No. 19-CV-01089-PAB-KLM, 2020 WL 1493490, at *2 (D. Colo. Mar. 26, 2020) (citing 518 F.3d at 1188-89) (alteration in original). Therefore, the Court construes *Port City* as addressing only ordinary preemption.

[3] Section 10501(b) provides in full: "The jurisdiction of the Board over – (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law. 49 U.S.C § 10501(b).

6

Defendants do not explain how § 10501(b) would provide a "substitute" federal cause of action for City's state-law claim, as required under the Tenth Circuit's test to provide federal subject-matter jurisdiction.  Courts have held that a "run of the mill express preemption provision – like the one found in § 10501 of the ICCTA – is not sufficient to create *complete* preemption." *Christensen*, 242 F. Supp. 3d at 1190 (collecting cases) (emphasis added).  *See Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1190 (8th Cir. 2015) (explaining that "[t]he ICCTA's express preemption provision may be a key factor in determining the extent of the statute's ordinary preemption, as well as Congress's intent to completely preempt some claims, but it does not address removal or explicitly provide for federal-question jurisdiction over all preempted state-law claims").  In other words, the STB's exclusive jurisdiction applies only to "violations of the ICCTA's substantive provisions or accompanying regulations." *Christensen*, 242 F. Supp. 3d at 1192.  Therefore, § 10501(b) cannot alone confer federal subject-matter jurisdiction.  In the absence of a substitute federal cause of action under the ICCTA that would encompass City's claim, which § 10501(b) fails to do, the Court concludes that "Congress has not manifested an intent for the ICCTA to provide [an] exclusive cause of action or serve as the basis for removal here." *Christensen*, 242 F. Supp. 3d at 1191-92 (finding no complete preemption of plaintiffs' state-law easement injunction claim against railroad under ICCTA, where defendants identified "no ICCTA provision or regulation to give plaintiffs a federal cause of action sufficiently similar to their state-law claims to justify applying the complete preemption doctrine").[4]

---

[4] The Court additionally notes that "[t]he primary focus of the ICCTA's substantive provisions is regulation of competition, rates, licensing, finance, and the economic relationships between shippers and carriers." *Griffioen*, 785 F.3d at 1191 (citing 49 U.S.C. § 10101).  City's allegation that the Tulsa Zoning Code applies to Defendants' transloading operations for purposes of safety does not plainly fall within this substantive framework.

7

Defendants' cited authority is distinguishable. Defendants rely on an STB case, which found that the ICCTA preempted application of municipal zoning ordinances prohibiting operation of a freight yard. *See Boston & Maine Corp. & Springfield Terminal R.R. Co. – Pet. for Declaratory Order*, 2013 WL 3788140 (S.T.B. July 19, 2013). In *Boston*, the STB found conflict between a town's attempt to enforce municipal zoning ordinances against a rail carrier and 49 U.S.C. § 11101, which provides that a "rail carrier providing transportation or service subject to the jurisdiction of the [STB] under this part shall provide the transportation or service on reasonable request." *Id.* at *3. The STB concluded the town's actions were preempted by federal law, pursuant to § 10501(b)'s preemption provision. *Id.* Defendants' reliance on *Boston* is misplaced. There is no indication that "complete preemption" was at issue in *Boston*. The STB in *Boston* did not identify a substitute federal law to vindicate the town's rights. Rather, the STB found a conflict between the municipal ordinance and § 11101, which required ordinary preemption in favor of federal law.

Defendants additionally rely on two "complete preemption" decisions from other circuits, which found removal was proper because the ICCTA completely preempted the plaintiffs' state-law claims through § 10501(b). *See PCI Transp., Inc. v. Fort Worth & W.R.R. Co.*, 418 F.3d 535, 540, 544-45 (5th Cir. 2005) (finding ICCTA completely preempted state-based claim for injunctive relief that would "fall squarely under § 10501(b)," by inquiring only "whether Congress intended that the federal action be exclusive"); *Cedarapids, Inc. v. Chicago, Central & Pac. R.R. Co.*, 265 F. Supp. 2d 1005, 1011 (N.D. Iowa 2003) (concluding ICCTA completely preempted state-law claims, by asking only "whether the ICCTA so pervasively occupies the field of railroad governance that a competing state law claim necessarily invokes federal law"). The Court acknowledges this law but finds it inapplicable, as it is inconsistent with the Tenth Circuit's

8

additional requirement of a substitute federal cause of action for the state cause of action. *See Schmeling*, 97 F.3d at 1342-43 (discussing different interpretations of "complete preemption" doctrine and concluding that "removal based on [complete] preemption is permissible *only* if federal law provides a replacement cause of action") (emphasis added). *See generally Fayard*, 533 F.3d at 49 (explaining that, "absent a clear-cut federal cause of action [focusing on the same wrong or harm], a danger exists of creating gaps in protection by categorically supplanting state claims with non-existent federal remedies").

Plaintiff's Motion to Remand (ECF No. 17) is **GRANTED**. The complete preemption doctrine does not apply to City's claim, and the case was improperly removed to this Court. It is **ORDERED** that this case is **REMANDED** to the District Court for Tulsa County, Oklahoma, where it was originally filed as Case No. CV-2024-00924.[5]

**SO ORDERED** this 1st day of November, 2024.

_____
JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[5] The Court does not address whether Defendants may raise an ordinary preemption defense in state court. That question is for the state court to decide. *See Felix v. Lucent Techs.*, 387 F.3d 1146, 1158 (10th Cir. 2004) ("When the doctrine of complete preemption does not apply . . . the district court, being without removal jurisdiction cannot resolve the dispute regarding [defensive] preemption [and it] lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.").